## APPLICATION OF A RECENT CONSTITUTIONAL AMENDMENT.

Court of Appeals for Morrow County.

### JOHN C. MORROW v. STATE OF OHIO.

Decided, June 26, 1913.

*Criminal Law—Amendment Permitting Prosecutor to Comment Upon Failure of Prosecuting Witness to Take the Stand—Not Applicable to a Case Begun in December Last—Must Said Amendment be Supplemented by Legislative Action?—Competency of Evidence—Section 13661.*

1. A conversation between a jail prisoner and an acquaintance, which was overheard by the sheriff who had concealed himself for that purpose and during which the prisoner made certain inculpatory statements, is admissible in evidence at his trial.
2. It is not error, in a criminal trial, for the court to refuse to instruct the jury before argument upon matters of law. 4 C. C., 378, followed.
3. The case of one arrested and examined before a justice of the peace in December, 1912, the transcript of which proceedings was filed in the common pleas court before the end of that month, was pending prior to January 1, 1913, and falls within the saving provision of the constitutional amendment which permits the prosecuting attorney to comment upon the fact that the accused failed to take the stand in his own behalf and the court to make reference thereto in the charge to the jury.

J. W. Barry and T. B. Mateer, for plaintiff in error.
Benjamin Olds and J. C. Williamson, contra.

SHIELDS, J.; VOORHEES, J., and POLLOCK, J. (sitting in place of Powell, J.), concur.

At the February (1913) term of the Court of Common Pleas of Morrow County, Ohio, an indictment was returned by the grand jury of said county against the plaintiff in error for the crime of murder in the first degree. A motion to quash said indictment, and a demurrer thereto, were overruled, to which exceptions were taken. Thereupon the plaintiff in error entered a plea of not guilty to said indictment, and at said term of court he was put upon trial on said indictment and was con-

victed of the crime of murder in the second degree. A motion for a new trial was overruled to which exceptions were taken, and the plaintiff in error was thereupon sentenced by said court to imprisonment in the Ohio penitentiary for life. A bill of exceptions was taken containing the evidence upon said trial, including the charge of said court, and a petition in error is filed in this court for the review and reversal of said judgment of conviction and sentence of the said court of common pleas, and the grounds of error alleged therein are as follows:

"1.   The court erred in overruling the motion of plaintiff in error for a new trial.

"2.   The court erred in overruling the motion of the defendant at the close of the testimony of the state, to direct the jury to return a verdict for the defendant, which motion was renewed by defendant after the close of the testimony on the part of the defense.

"3.   For misconduct of counsel on the part of the state in his closing argument, in this, to-wit: In commenting on the failure of the defendant for not going upon the witness stand in his own behalf.

"4.   The court erred in charging the jury that the failure of the defendant to testify in his own behalf was a circumstance that the jury might consider in arriving at a verdict.

"5.   The court erred in refusing to charge the jury in writing before argument as requested by defendant.

"6.   The court erred in his charge to the jury.

"7.   The court erred in the admission of testimony offered by state and at the time objected to by defendant.

"8.   The court erred in rejecting the testimony offered by the defendant and at the time excepted to by the defendant.

"9.   Because the state failed to show by testimony that any crime had been committed.

"10.   The verdict of the jury is not supported by the evidence.

"11.   The verdict of the jury is contrary to law.

"12.   The verdict of the jury is contrary to law and the evidence.

"13.   The verdict of the jury seems to have been procured through prejudice and partiality.

"14.   The verdict of the jury is not supported by any evidence.

"15.   The verdict of the jury should have been for the defendant.

"16. Other errors occurring at the trial appearing upon the record."

We will consider the assignment of the alleged errors in the order in which they were presented to this court. The first is that the court below erred in admitting any testimony under said indictment for the reason that said indictment does not specifically allege intent. An examination of said indictment shows that it expressly charges intent, thus meeting the requirements of a valid indictment in this respect. Hence the demurrer filed challenging the sufficiency of said indictment was properly overruled, and the action of the court below in overruling the same affords no ground of error.

At the close of the evidence offered upon the part of the state, a motion was submitted by the defendant below, which said motion was renewed at the close of the evidence offered upon the part of the defense, that the court instruct the jury to return a verdict for the said defendant, which was overruled. Suffice it to say that the action of the court in overruling said motion was well justified in the face of the record in this case.

Objection was made to the admission and rejection of certain testimony offered upon said trial. Among others, one Harry Brookens testified as a witness for the state. The record shows that a conversation was had between said witness and the accused soon after the alleged crime, and before the arrest of the accused, in which the accused made certain inquiries of the witness. In a talk concerning the death of the decedent, the witness testified on page 139 of the record that the accused made the following inquiries:

"Q. Did he ask you anything relative to the sentiment in the community?
"Objection. Overruled. Exception.
"A. Yes, he asked me how the people felt about it."

A motion was made by the plaintiff in error that the latter answer be withdrawn from the jury, which was overruled, to which the plaintiff in error excepted, and which action of the court below is assigned as error. The plaintiff in error having

made such inquiries upon his own volition, related as they were to the charge afterwards made against him, the state was clearly entitled to make proof of such conversation, and the action of the court in admitting it was proper.

Objection was also made by the plaintiff in error to the introduction of the testimony of Marian E. Piatt, a witness for the state, as the same appears on page 286 of the record, in relation to the pillow-slip alleged to have been found in the bed upon which the decedent was lying with its head imbedded therein, which objection was overruled by the court and to which the plaintiff in error excepted. The overruling of such objection is claimed to be error upon the part of the court. Without setting out such testimony, we are of the opinion that it was only a narrative of facts forming a part of the discovery and location of the body of the decedent, and therefore such testimony was competent.

It is contended by the plaintiff in error that the court below erred in the admission of certain conversations alleged to have been had between the said witness, Marian E. Piatt, and one C. B. Chilcote with the accused after his arrest and after he was placed in the jail of said county. The record shows that the said Marian E. Piatt is the mother of the decedent and the said C. B. Chilcote was at the time the sheriff of said Morrow county. The record also shows that the testimony of the latter witness offered by the state as to the first conversation alleged to have been had between said witness and the accused was excluded from the jury, but it insisted that the subsequent conversation alleged to have occurred between the witness Marian E. Piatt and the accused, at said jail, when it appears that the witness, C. B. Chilcote, so concealed his presence that the accused did not know that he was within hearing distance, but who overheard said conversation, was inadmissible, because of inducements alleged to have been offered to the accused by said witness in said conversation to make certain statements in the nature of a confession of having committed said alleged crime. It appears that the witness, Marian E. Piatt, was well known to the accused, he having lived in her family for a con-

siderable time prior to his incarceration in said jail, and expressed a desire to see and talk with him, and it appears that the said sheriff permitted her to enter said jail for that purpose, but upon the express condition that he (the sheriff) hear any conversation had between them, and with the caution given to the witness by the sheriff that she should act discreetly and avoid holding out any promises of favor or otherwise to induce the accused to make any disclosures concerning his relation to the alleged crime. It appears that the witness, Marian E. Piatt, entered the jail and had a conversation with the accused (the sheriff being stationed on the bath room steps, without the knowledge of the accused, so that he could and did hear said conversation), during which conversation the accused is alleged to have made certain inculpatory statements of the suffocation of the decedent by him. Objection was made by the plaintiff in error to the introduction of this testimony, which it is claimed was in the nature of a confession, and that the statements alleged to have been made by the accused in said conversation were not voluntarily made, which objection was overruled by the court below and to which exception was taken.

In this State, at least, it is the recognized rule that before any confession can be received in evidence in a criminal case, it must appear that it was voluntarily made, and that a confession induced by hope or fear, excited in the mind by the representations or threats of any one, is not to be considered voluntary. Quoting from the opinion in the case of *Rufer et al* v. *State,* 25 Ohio St., 470, the learned judge announcing the opinion in that case, says:

"Whilst voluntary confessions are always admissible against a prisoner on trial, it is well settled that confessions of guilt made through the influence of hopes or fears, induced by promises or threats of temporal benefit or disadvantage, are wholly inadmissible. There is no presumption of law, however, that such confessions are induced by improper representations made to the prisoner, but, on the contrary, like every other act of the human hand or head, they are presumed to be voluntarily until the contrary is shown. Hence the burden of showing that such confessions were involuntary, rests upon the accused." See also *Spears* v. *State,* 2 Ohio St., 583.

Tested by this rule, what is the status of the case at bar? Looking to the record, can it be said that the witness failed to observe the caution given by the sheriff by making representations to the accused that inspired him with the hope of favor to induce him to make the declarations attributed to him? Were such representations the means of producing such alleged declarations? If they were, it could not be claimed that they were voluntarily made, although made to one not having any authority or control over the prosecution of the accused, or of his custody, for the presence of the sheriff in the jail was not then known to the accused. Under the preliminary examination made of the witness to determine the admissibility of this conversation by the court, showing as it does the circumstances under which it was given, we are of the opinion that such conversation, and the statements made by the accused at that time, were not made under the provocation of any threats, or through the influence of any hopes or fears, induced by any representations of the witness, and that the court below therefore did not err in admitting said conversation.

Referring to the expert testimony offered upon the part of the plaintiff in error, objection was made and exception taken to the action of the court below in sustaining the motion to strike out a portion of the testimony of one Doctor Spear, a witness for the plaintiff in error, as the same appears on page 505 of the record. Said witness testified as follows:

"Q. I will ask you, Doctor, whether or not you have ever had any experience in cases of suffocation? A. Yes sir, I recall one case.

"Q. Where was that, Doctor? A. That was at Edison, while I was coroner. The woman had an epileptic seizure with her face buried in the pillow.

"Prosecuting Attorney: I ask that that be ruled out.

"By the Court: He said at Edison, Ohio. That's an answer to the question; the other will be ruled out." To which ruling the defendant excepted at the time.

The remark made by the court in passing upon this question is so self-explanatory as not to require further comment. The motion was properly sustained. On page 418 of the record

it appears that Professor Howard was called as a witness for the state and on cross-examination, at pgae 420, he testified as follows:

"Q. Doctor, from your experience and observation would you be qualified to tell the jury how long that food had been in the stomach before death ensued? A. I don't think I would be able to give any valuable testimony as compared with the physicians.

"Q. Give it to us, Doctor, from your observation and experience as near as you can?

"Objected to.

"By the Court: You have no experience as a doctor? A. No, sir.

"Attorney Barry: He has had experience in examining stomachs, that he would know whether death occurred about the time.

"By the Court: Objection sustained. Exception."

Evidently the question was a proper one to put to the witness, in view of the subject under consideration, namely, the condition of the stomach of the decedent, but had not the witness practically answered this inquiry in a prior question asked? We think so. Again, if he had not so answered, had the witness properly qualified to make such answer to such question? We think not. The question was one involving a scientific opinion, was the witness shown to possess the peculiar knowledge called for by the question asked? The preliminary questions asked of the witness seem to furnish the answer (2 Ohio St., 452). Said exception is therefore held not to have been well taken.

Exceptions were also taken to the exclusion of certain other expert testimony offered upon said trial, but we do not regard the action of the court in excluding such testimony as ground of reversible error.

Before the court below charged the jury in said case, certain written requests were submitted to said court upon the part of the plaintiff in error to be given to the jury before argument, some of which were given and others were refused. To such as were not so given the plaintiff in error excepted. An examination of the charge of the court shows that all the requests not so

given to the jury before argument, were given to the jury in substance in said court's general charge. While the practice with courts in giving to the jury written requests, in criminal cases, before argument, has not been entirely uniform in the former circuit courts in this state, the practice in this district is now and has been to follow the rule laid down in the case of *Umbenauer* v. *State,* reported in 4 Circuit Court Reports, 378, wherein it is held that:

"Upon the trial of a criminal case it is not error for the court to refuse to instruct the jury, at the request of the defendant, upon matters of law before the argument begins."

This case was carried to the Supreme Court and affirmed, and has not been overruled. In refusing to give said requests to the jury before argument, we hold that the court below did not err.

Error is also assigned because the prosecuting attorney in his argument to the jury referred to the fact that the plaintiff in error did not take the witness stand and testify in his own behalf, and that the court below in its charge to the jury referred to such fact. In other words, the plaintiff in error charges misconduct on the part of the prosecuting attorney in his argument to the jury and error in said court's charge to the jury. Ordinarily it is in the discretion of the trial court to control the argument of counsel in all matters relating to the conduct of trials, and it is only in cases where the court refuses to exercise its powers, or where its discretion is manifestly abused by permitting prejudicial matters to be discussed in argument before the jury that appellate courts will interfere, but where the constitutional rights of a party defendant on trial are invaded and assailed in argument, it is contended that it is the imperative duty of such courts to intervene, especially in cases where the liberty of a person is involved. Without stopping to theorize on the universality of the law which contemplates giving to every person charged with the commission of crime a fair and impartial trial, let us proceed direct to the consideration of the error here assigned, and in the consideration of such alleged

error we will treat the alleged misconduct of the prosecuting attorney and the alleged error of said court together, because they both involve the investigation and determination of the same question.

In his argument to the jury the record shows that the prosecuting attorney in addressing the jury referred to and commented on the fact that the plaintiff in error did not take the witness stand in his own defense. In submitting the case to the jury, the court below charged the jury as follows:

"The failure of the defendant to take the stand in his own behalf is a circumstance which you may take into consideration in connection with all the evidence and circumstances of the case, to determine whether he is guilty of the crime charged. But if upon a consideration of all the evidence and circumstances of the case, including that of his failure to testify, you entertain a reasonable doubt of defendant's guilt, then the mere fact that he failed to testify should not operate to the prejudice of defendant."

Authority to refer to and comment on the failure of the accused to take the witness stand in his own behalf is claimed to have been conferred by the late constitutional amendment, Section 10, Article I, which became effective January 1, 1913. The view we take of this question renders it unnecessary to determine whether or not said amendment acts automatically, or that said amendment must be supplemented by legislative action to give it effect.

Before the adoption and taking effect of said constitutional amendment the statute in force regulating the procedure of criminal trials for crimes and offenses committed before that time, except as hereinafter stated, in respect to the right of the accused to take the witness stand in his own behalf was Section 13661, General Code, passed in conformity with the provisions of Section 10, Article I. of the Bill of Rights, which provided that:

"On the trial of indictments, complaints, and other proceedings against a person charged with an offense, such person at his own request shall be a competent witness. The neglect or refusal of such person to testify shall not create a presumption

against him, nor shall reference be made to, nor comment made upon such neglect or refusal.''

Under this section the accused was a competent witness in his own behalf, if he elected to testify; but if not, such fact was not allowed to be made the subject of comment, and all reference thereto was forbidden, and a violation of this statute has frequently been held by the courts as affording ground for a new trial.

It is claimed that the foregoing statute has been superseded by such constitutional amendment, Section 10, Article I, and which in part is as follows:

''No person shall be compelled, in any criminal case, to be a witness against himself; but his failure to testify may be considered by the court and jury and may be made the subject of comment by counsel.''

It is by virtue of this amendment that the state claimed authority to comment on the failure of the accused to take the witness stand in his own behalf, and the court to call attention to it as appears in said charge, while the plaintiff in error denied such right or authority and contended that the provision of said Section 13661, General Code, governed the procedure of said trial.

It appears that the death of Marian Estella Piatt occurred November 27, 1912; that the accused was arrested and charged with said crime December 12, 1912, before one J. M. Griffis, a justice of the peace in said Morrow county; that on the 14th day of December, 1912, the accused waived examination and was committed to jail on said charge; that on the 14th day of February, 1913, the accused was indicted by the grand jury of Morrow county for said crime, and on the 10th day of April, 1913, he was found not guilty of murder in the first degree but guilty of murder in the second degree.

In the schedule to the several amendments to the Constitution which became effective January 1, 1913, it is provided that:

''The several amendments passed and submitted by this convention when adopted at the election shall take effect on the

first day of January, 1913, except as otherwise specifically
provided by the schedule attached to any of said amendments.
All laws then in force, not inconsistent therewith, shall con-
tinue in force until amended or repealed; provided that all
cases pending in the courts on the first day of January, 1913,
shall be heard and tried in the same manner and by the same
procedure as is now authorized by law.''

That said Section 13661 is inconsistent with the provisions of
said constitutional amendment, Section 10, Article I, is appar-
ent, and the question then arises, under the facts stated in rela-
tion to the time of the arrest and commitment of the accused on
said charge, whether or not the case at bar was pending Janu-
ary 1, 1913, and is included in the exceptions to said amendment
as contained in said schedule. If the case falls within such ex-
ceptions, then the contention made by the plaintiff in error is
well taken, otherwise it is not. The inquiry is, then, what is
meant by ''cases pending in the courts''? When can it be said
that a case is pending? A criminal case ready for trial, for
instance, not only consists of an indictment, but the indictment
may be only one of many stages of proceedings had before the
case is ready for trial. This is especially true where the ac-
cused is arrested and a preliminary examination is had before
the indictment is returned by a grand jury. Consulting the
text-writers upon this subject, we find that in *Wharton's Crim-
inal Pleading and Practice*, 9th Edition, Section 1, it is laid
down that:

''The usual commencement of a criminal procedure is a
preliminary oath before a magistrate, upon which, if it appear
on the face of such oath that a criminal offense has been com-
mitted by the defendant within the magistrate's jurisdiction, a
warrant may issue.''

. In *Bishop's Criminal Procedure*, Sections 28 and 29, it is
also laid down:

''That the successive steps in a criminal cause are: 1. The
steps which precede the indictment or information. 2. What
follows down to the finding upon the facts. 3. From the find-
ing of guilty to the complete execution of the sentence.''

In the case of *Hartnett* v. *State,* 42 Ohio St., 568, it is laid down that:

"The *first* step, the arrest, the examination and commitment, the presentment by the grand jury of the written accusation of the crime, which becomes the indictment, the arraignment, plea, trial, verdict, sentence and execution, are regarded as successive steps in a criminal cause or prosecution."

And in the same case it is likewise held that:

"When a person is arrested and duly committed for a crime, for which he is thereafter indicted, the prosecution for that crime is pending, within the meaning of Revised Statutes, Section 79, as soon as he is arrested and committed."

Hence we think it follows that the arrest and commitment of the accused before the said justice of the peace in December, 1912, and the further fact that the transcript of the proceedings had against the accused before said justice of the peace was duly certified to the clerk of courts of said Morrow county and filed in his office December 17, 1912, must be deemed to be a commencement of the case, and was then a pending case, in contemplation of law. If we are correct in this view, if the case was one that was pending before January 1, 1913, then does it not fall within the express words of the saving clause contained in said schedule? Respecting repeals and amendments of statutes, Section 26, General Code, provides that:

"Whenever a statute is repealed or amended, such repeal or amendment shall in no manner affect pending actions, prosecutions, or proceedings, civil or criminal, and when the repeal or amendment relates to the remedy, it shall not affect pending actions, prosecutions, or proceedings, unless so expressed, nor shall any repeal or amendment affect causes of such action, prosecution, or proceeding, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act."

That said constitutional amendment would be paramount to and work a repeal of said Section 13661, in the absence of the saving clause referred to, is not open to question, and said Sec-

tion 26 provides "that such repeal  *  *  *  shall in no wise affect pending prosecutions, unless otherwise expressly provided in the repealing act." In said schedule it is expressly provided "that all cases pending in the courts January 1, 1913, shall be heard and tried in the same manner and by the same procedure as is now authorized by law." Here is an express provision saving "all cases pending" at the time mentioned. *Palmer* v. *State,* 42 Ohio St., 596; *Bergin* v. *State,* 31 Ohio St., 111; *State* v. *Lawrence,* 74 Ohio St., 38; *Bevitt* v. *Diehl,* 12 Ohio Decisions, 315.

As before indicated, we are of the opinion that the case at bar falls within the saving clause of the schedule to said amendment, that the mode of procedure governing the trial of this case was according to the law in force prior to the adoption and taking effect of the said constitutional amendment, and that the conduct of the prosecuting attorney in his argument to the jury in referring to the accused as not having taken the witness stand in his own defense, as well as the court in its charge to the jury in making reference to the same, was error for which this case should be reversed.

At the expense of no little time and care we have examined the voluminous record herein with especial reference to the contention of counsel for the plaintiff in error that the verdict of the jury is against the manifest weight of the evidence, and is not supported by any evidence, and we are unable to agree with counsel in such contention. We have also examined the other assignments of error in the petition in error of the plaintiff in error, not herein specifically referred to, and we find no substantial or prejudicial error in said record for which this case should be reversed, except the sole error hereinbefore referred to.

A cross-petition in error is filed herein by the prosecuting attorney wherein this court is requested to pass upon certain questions involving the admissibility of evidence sought to be introduced by the state on the trial of the case below, to the introduction of which evidence the defendant objected and the state excepted. Section 13681, General Code, provides:

"That the prosecuting attorney or the Attorney-General may except to a decision of the court and may present a bill of exceptions thereto, which the court shall sign, and it shall be made a part of the record."

We apprehend this section relates to error proceedings prosecuted in the Supreme Court. However that may be, we are of the opinion that until the pending case is terminated and a final judgment is rendered therein, the interests of the state will not suffer. The application made will be denied on the authority of *State* v. *Dickerson*, 73 Ohio St., 193.

For the reasons hereinbefore stated, the judgment of the court of common pleas will be reversed and said cause is remanded to said court for further proceedings according to law. Exceptions noted.