Farr, J.
(of the Seventh District, sitting in place of Cushing, J.). The original action was to set aside or correct an award of an arbitrator to whom a controversy had been referred. It will be necessary to give a resume of certain facts. ■
In 1909, the plaintiff, Otto Pfleger, who had been a judge of the court of common pleas of Hamilton county, Ohio, upon the completion of his term of office, entered the practice of law in association with defendants Otto Renner and his brother, the late Philip Renner. While the precise terms of the arrangement are in dispute, it appears that plaintiff was to act as trial counsel and to present in court such cases as might be turned over to him from time to time by the firm of Renner & Renner, and the fees earned in such cases were to be divided equally between him and the firm. He was. also to have the right to attend to and rebuild his own practice, and was to have the benefit of the services of the clerks and office employes of the firm in such cases.
During the year 1916 a client of the firm of Renner & Renner had a claim against the estate of Laura Ogden Whaling. Through information received from this client plaintiff came into contact *98 with one Charles P. Devou, and an action to set aside the will of Laura Ogden Whaling was instituted. There was associated as counsel one Herbert Jackson, and plaintiff prepared the petition, signing the names of the attorneys for plaintiff, ■ including his own name and that of the firm of Renner & Renner. Thereafter it developed that there was a large number of other persons who might be interested in the will contest, and the plaintiff secured employment, on behalf of a great number of said parties in interest, making contracts with them in his individual name and for" contingent fees.
Plaintiff contends that thereafter, and some time prior to the death of Philip Renner, he agreed with Philip that he should take over the entire case and make an equitable adjustment as to the fees.
He then continued making preparations for the case and for a period of years made an exhaustive study and investigation preparatory to trial. The evidence shows that he used great diligence and skill, interviewing more than two hundred witnesses. It will not be necessary to enumerate the work in detail, but it included the taking of depositions, the examination of authorities, the interviewing of witnesses and the procuring of statements and affidavits.
Philip Renner died in November, 1916, but, in substantially all the other cases which were turned over to him from the Renner office, plaintiff’s relation remained the same after Philip’s death as it had been before.
About February, 1918, negotiations for the compromise of the case were begun, and, on May 25, *99 1918, a settlement was effected whereby all the contesting heirs received a total sum of $131,000. Of those heirs, numbering over three hundred, about 87% were represented by the parties to this action and the remainder had other counsel. By agreement among all the lawyers for the respective parties, but in the absence of Otto Renner, it was agreed that before distribution of the fund of $131,000 certain fees should be paid to those lawyers who had borne the burden of the work. $12,500 was awarded to the plaintiff, $1,000 to the firm of Renner & Renner, and other sums to a number of attorneys who had participated in the active conduct of the preparation and in the settlement. Thereafter, a dispute arose between plaintiff and the Renners about the division of the fees and emoluments growing out of the case, and, in July, 1918, the plaintiff and the defendants Otto Renner and Mary Renner, widow of Philip Renner, who participated individually and as administratrix of the estate of her husband, entered into an agreement of arbitration, by the terms of which the parties were to make full statements and offer testimony without regard to technical rules of evidence, as to whether or not the firm of Renner & Renner was entitled to share in the fees which came from parties with whom plaintiff had signed contracts in his individual name, and, if so, to what extent. The whole matter was to be submitted to the defendant John R. Schindel, as arbitrator, and the parties agreed to abide by and perform and fulfill the award to be made by him.
*100 It was admitted by the Renners that plaintiff was entitled to one-half of said moneys. Accordingly he was allowed to draw this, and a sum of $20,000, being substantially the other half, was deposited in bank, and the arbitrator was authorized to draw checks in favor of the several parties for the amount that he might award to each. He was also given the power to fix the amount of and to draw compensation for his services.
The parties then appeared before the arbitrator, who heard the testimony of witnesses almost every day for a period of several weeks, though the hearings did not consume the business time of every day. About March *31, 1919, the arbitrator rendered his award, which found that the firm of Renner & Renner was entitled t'o a substantial part of all the fees, including the $12,500 item, which plaintiff contends was in the nature of a personal gift by the heirs and their attorneys to him. The arbitrator awarded to him the sum of $1,550 of this amount, and divided all the other fees equally between them, including the $12,500 item, and all other fees and emoluments accruing either to him or to the firm from the litigation in.the Whaling will case.
Prior to the rendition of what has been termed the award, the arbitrator wrote what he called an opinion, in the course of which he set forth substantially what was embodied in the award, but fixing his own fee at $1,000. In the final award this fee was fixed at $1,500, there having intervened some further labor on the part of the arbitrator, who granted what the parties termed a “rehearing.”
*101 The plaintiff brought suit in the superior court of Cincinnati, alleging that the arbitrator, whom he entitled a “referee,” made gross mistakes in his findings of fact and of law and rendered a finding which is §o egregiously wrong as to work a fraud upon this plaintiff. From the decision of the superior court denying relief, plaintiff appeals, and the matter is heard de novo.
The plaintiff now makes and urges the further claim that the arbitrator became disqualified by reason of the employment by defendant Otto Renner of Rufus B. Smith as his attorney, when said Smith was a client of the arbitrator, though that was unknown to the plaintiff.
On the last point, this court heard evidence in the form of oral statements, all parties waiving the requirement of testimony under oath.
The relation of the parties upon which this last claim is founded grows out of the following. In the year 1914'an action was brought in the United States district court for the southern district of Ohio, wherein the court appointed as receivers for the Cincinnati, Hamilton & Dayton Railroad Company Judson Harmon and Rufus B. Smith. Their principal counsel was Morison R. Waite. Defendant Schindel was his law partner, and this fact was admittedly known to all the parties. Mr. Waite personally attended to the litigation in the federal court involving the receivership until the happening of certain events in 1919. The testimony shows, however, that the firm acted as local counsel for the receivers, and the firm of which counsel for plaintiff was a member was in litigation with the receivers in five cases, in all of which the firm of *102 Waite & Schindel, or Waite, Schindel & Bayless, was counsel of record. The receivership matters in the federal court were handled exclusively by Mr. Waite. After the sale of The Cincinnati, Hamilton & Dayton Railroad properties, pursuant to the order of the federal court, The Toledo & Cincinnati Railroad Company on July 9, 1917, took over the properties and assumed all the liabilities of the receivers. Thereafter, in 1919, litigation was still being carried on in the name of the receivers, though in fact for the use and benefits of The Toledo & Cincinnati Railroad Company, and, in connection with these proceedings, the defendant Schindel signed an application for rehearing in the United States circuit court of appeals for the receivers in the summer of 1919, and later signed a petition- for certiorari in the supreme court of the United States in the same capacity.
It is contended that the relation of attorney and client existed between defendant Schindel and Rufus B. Smith, which was unknown to plaintiff, and which rendered it improper for Schindel to act as arbitrator after Judge Smith was employed by defendant Otto Renner to represent him in the arbitration.
We are of opinion that at the time of the arbitration the relation of attorney and client between Schindel and Judge Smith was merely nominal, and that Judge Smith had no interest in the litigation being carried on in the name of Judson Harmon and himself. In contemplation of chancery, therefore, the contention is without substance.
We are further of opinion that apart from these matters in the federal court, to which we have just *103 alluded, counsel for the plaintiff were aware of the relation between Smith and Schindel, and, cannot, on that ground, now complain of the award'in the arbitration to which they voluntarily submitted with knowledge of the relation. See 5 Corpus Juris, 66, and Robb v. Brachman, 38 Ohio St., 423.
Moreover, we are of opinion from the facts shown that there was no fraud or impropriety or misconduct of any sort, either constructive or actual, on the part either of the arbitrator or counsel for the defendant.
The contention of the parties with respect to the award and its effect has been elaborately briefed and argued. The arbitration in question was a common-law arbitration and was not pursuant to the Ohio statute. The law is well established. Where parties make an agreement to arbitrate and provide that the award of the arbitrator shall be final and conclusive upon them, and a trial is had pursuant to the terms of the agreement, and an award is rendered, which in all respects conforms to the requirements of the submission, such award, in the absence of fraud or of such manifest mistake as naturally works a fraud, is binding upon the parties. Corrigan v. Rockefeller, 67 Ohio St., 354.
We have already disposed of any question of fraud. What, then, is the nature of “such manifest mistake as naturally works a fraud” and which entitles a party to relief against an award of an arbitrator? It will not be profitable to set out the authorities, nor to attempt to discuss them in detail. A mere error of judgment on the part of an arbitrator is not “manifest mistake.'” If such were the case, an agreement to arbitrate could al *104 ways be subject to attack by the party who asserted the claim in good faith, and which the arbitrator did not sustain. To such a person there is always a mistake on the part of an arbitrator. To warrant a court in setting aside an award on the ground of manifest mistake it must appear that there is a mistake of such character that the arbitrator, had it been called to his attention, would have corrected it himself.
In Burchell v. Marsh et al., 58 U. S., 344, the supreme court, in speaking of the effect of an award by arbitrators, quotes from Knox v. Symmonds, 1 Vesey Jr., 369, as follows:
“To induce the court to interfere, there must be something more than error of judgment, such as corruption in the arbitrator, or gross mistake, either apparent on the face of the award, or to be made out by evidence; but in case of mistake, it must be made out to the satisfaction of the arbitrator, and that if it had not happened, he should have made a different award.”
And then the court says:
“Courts should be careful to avoid a wrong use of the word ‘mistake,’ and, by making it synonymous with mere error of judgment, assume to themselves an arbitrary power over awards.”
Again, in conclusion, the court says:
“If they [the arbitrators] have given their honest, incorrupt, judgment on the subject-matters submitted to them, after a full and fair hearing of the parties, they are bound by it.”
The contentions made in the hearing before the arbitrator are reargued here. Enough has been shown to convince the court that there was sub-. *105 mitted to the arbitrator a series of questions that were by no means, easy of solution, and which might well have been bitterly contested in litigation. It is not the duty of this court to examine anew each of the contentions of law and fact which the arbitrator was called upon to determine. The parties by their agreement have seen fit to choose their own forum to contest these questions. When parties submit a matter to arbitration, they incur the risk of honest mistakes that their chosen umpire may commit. To the mind of every person against whom a decision by an arbitrator is rendered the award necessarily works an injustice. That does not, of itself, constitute sufficient grounds to impeach the determination.
We are of opinion, therefore, that plaintiff has not made out a case sufficient to warrant the court in granting the prayer for equitable relief.

Decree accordingly.

Shohl, P. J., and Hamilton, J., concur.