For the foregoing reasons, it appears to me that the judgment of the Court of Common Pleas, in favor of the plaintiff, should be reversed.

MILLER, APPELLEE, *v.* CANTON MOTOR COACH, INC., APPELLANT.

(Decided December 30, 1937.)

*Mr. Faber Drukenbrod* and *Messrs. Amerman & Mills,* for appellee.

*Mr. Frank T. Bow,* for appellant.

Montgomery, P. J. Adam J. Miller was the owner of 203 shares of the capital stock of Canton Motor Coach, Inc., the total outstanding issue of stock being 2730½ shares. The directors of the company, having agreed upon a sale of all its assets, called a meeting of the stockholders to approve their action. At the meeting so called the holders of all the capital stock appeared, either in person or by proxy, and all the shares were voted in approval of the action of the directors, excepting only the stock of Miller, aforesaid. He then proceeded under the provisions of Section 8623-72, General Code. No question is raised by either side as to the compliance with the provisions of that section. Miller demanded for his stock $300 per share. The company offered to pay him $40.91 per share. The testimony of the appraiser Hall shows that the book value of the stock was about $43 per share.

Under the provisions of Section 8623-72, General Code, and upon the filing of the petition by Miller, the court appointed as appraisers William McKinley Thompson, Charles W. Stoneburner and Dale C. Hall. These appraisers, after an apparently careful investigation and examination of the records of the company, filed their reports. The majority report was filed by the appraisers Thompson and Stoneburner and fixed the value of Miller's stock at $156 per share. The appraiser Hall filed a minority report in which he disagreed violently with the conclusion of the majority as to the value of the stock, but, as we shall point out hereafter, did not disagree in particular as to the methods which they pursued.

Upon submission to the Common Pleas Court, and after hearing considerable evidence for and against the confirmation of the majority report, the court approved this majority report and rendered judgment for Miller on the basis of $156 a share for his stock, subject only to a deduction for certain dividends re-

ceived. From that judgment an appeal was perfected to this court.

The appellant contends, first, that Section 8623-72, General Code, was not a valid enactment by the Legislature, and, in any event, is unconstitutional. Its counsel suggests that the trial court disposed of these contentions with a wave of the hand. Frankly, we are disposed to do much the same thing. We see nothing at all in the contention that this section, as enacted and in the form in which it was printed, is invalid, or is anything other than a properly enacted statute of the General Assembly of Ohio.

We note, incidentally, that the constitutionality of this section, as well as Sections 8623-14 and 8623-15, was upheld by the Court of Appeals of the Second Appellate District in the case of *Williams* v. *National Pump Corp.*, 46 Ohio App., 427, on pages 432 and 433 (188 N. E., 756). In this opinion that court says:

"These sections should be read into the certificates of stock, and form a part thereof."

In the annotations appearing on page 626 of 79 A. L. R., we note this statement:

"Statutes of the kind under consideration have been sustained on the ground of the reserved power of the state to amend or repeal corporate charters or the laws under which corporations are organized."

From an examination of this record, we cannot find that the trial court committed any error in the admission or exclusion of evidence.

There remains the one and essentially important question as to whether the trial court abused its discretion, or committed error, in confirming the majority report of the appraisers. What factors are to be considered under such a proceeding in arriving at a just figure for the payment to a dissenting stockholder? It would seem to be the fair cash value of the stock. Appraiser Hall, referring to the terms "fair cash value" and "fair market value," said: "I think the terms are

synonymous.'' He further stated, referring to stock in closed corporations, that ''the courts have held it still as the fair cash value even though there be no buyer for it.'' And he added, further: ''There does not necessarily have to be a market in order for a thing to have a fair market value.''

There is a dearth of authority in Ohio to serve as a guide in such a proceeding. Counsel on both sides concede that the leading case on the question now before us is that of *In re Fulton,* 257 N. Y., 487, 178 N. E., 766, 79 A. L. R., 608. We quote from page 494, as it appears in the official report as follows:

''The payment of such actual value, even if more than the market quotation, is the price that must be paid by the corporation for the privilege of requiring a sale over the protest of the dissenting stockholders who in effect are being ousted from the corporation.

''The purpose of the statute being to save the dissenting stockholder from loss by reason of the change in the nature of the business, he is entitled to receive the value of his stock for sale or its value for investment.

''No rule can be laid down for determining the actual or true value of stock of a given class except one of a very general nature and which may, in a particular case, be inapplicable because of varying provisions contained in the charter or by-laws of the corporation or because of the existence of a state of facts peculiar to the situation involved in the particular case.

''In addition to the aliquot value of the share of the applicable assets, which is the only factor to consider under the facts in this case, and market quotations, other elements should be considered by the appraisers. Those elements will necessarily vary in different cases, and it is not practical to attempt to state every circumstance which may properly influence appraisers in fixing the value of such stock.

"It will be readily appreciated that the appraisers should have considered the investment value of the stock which is largely determined by the rate of return, the security afforded that the dividends will be regularly paid, the possibility that dividends will be increased or diminished, the selling price of stocks of like character, the amount of preferred stock in comparison with the common stock, the size of the accumulated surplus applicable to the payment of dividends, the record of the corporation, and its prospects for the future.

"The appraisers in estimating the fair value of the stock being appraised should give such consideration as to them seems proper to each factor which might enter into such value, and their report as to value should be reasonable and in accordance with the facts proven."

The Supreme Court of South Carolina, in the case of *Manning* v. *Brandon Corp.*, 163 S. C., 178, 161 S. E., 405, discussing a statute somewhat similar to the Ohio statute, on page 186 said:

"This statute should be construed liberally in favor of the stockholder, so as to carry out the manifest theory of the act, and to save harmless the stockholder from all costs and expenses in obtaining the value of his stock at the time of the consolidation, and interest thereon from thirty days thereafter."

Tested by the generally accepted rule, let us consider what was taken into consideration by the majority of the appraisers. Thompson, who testified at considerable length, stated that they considered the income, the net worth of the property, the earnings, the franchise value, the company's own figures and records, and the income tax return as filed with the Federal Government. Stoneburner, who did not go into such detail upon the witness stand, stated that they considered all the minutes and records, and cash books

of the company and its physical assets, and made an analysis of the business of the company from the beginning.

Hall, when asked what would be the fair cash value, answered: "That is a difficult thing to say because there are so many factors to take into consideration, the actual and potential earnings, possibility of earnings, the book value, and a great many other things." It is to be observed that all of the appraisers seem to have taken the position, which is obviously correct, that value is not simply the market price, but is what the property is intrinsically worth, and that earning capacity is to be treated as a factor.

The majority of the appraisers found that $13 a share would be a fair estimate of earnings for the remaining four and three-fourths years of the existing franchise, and Mr. Hall testified that, so far as that finding is concerned, he was substantially in accord with the majority.

In his minority report, Hall makes this statement: "The appraisers in the majority report have arrived at their valuation by assuming that the shares should have sold for 12 times the annual earnings—$13 a share times 12, or a value of $156 a share. The method is one commonly used and is a reasonable yardstick for measuring the value of shares if the factor used is substantially correct."

It is to be observed further that the three appraisers agreed substantially upon the value of the physical assets of the corporation, as well as upon the return which it had made during the two years prior to the sale, and the probability of return for the remainder of the life of the franchise.

It is suggested by counsel for the appellee that these proceedings are to be governed by the rules governing arbitrated matters. Strictly speaking, of course, this is not a voluntary arbitration. It is a statutory remedy

provided by the Legislature of Ohio, in the nature of a special proceeding. It certainly does have, however, many of the characteristics of an arbitration, and the rules governing the latter are not inapplicable to such a special proceeding.

The rule governing arbitration proceedings seems to be that the conclusion of the arbitrators is final, entitling the successful party to judgment thereon, in the absence of fraud or of such manifest mistake as would naturally work a fraud. *Ormsby's Admrs.* v. *Bakewell*, 7 Ohio, 98; *Corrigan* v. *Rockefeller*, 67 Ohio St., 354, 66 N. E., 95; *Pfleger* v. *Renner*, 13 Ohio App., 96, 32 O. C. A., 329.

From a study of this record, and a consideration of the principles applicable thereto, we cannot find that, in confirming the majority report, the trial court abused its discretion, or committed error. We see nothing in the record which would justify the trial court, or which would justify this court, in substituting some judgment other than that of the majority of the appraisers. It follows, therefore, that the judgment of the Common Pleas Court should be, and it is, affirmed.

*Judgment affirmed.*

SHERICK and LEMERT, JJ., concur.