18-2343
*Safra Securities, LLC, et al. v. Daniela Spinola Gonzalez*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of April, two thousand nineteen.

Present:
> JOHN M. WALKER, JR.,
> GUIDO CALABRESI,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges.*

————————————————————————

SAFRA SECURITIES, LLC, SAFRA NATIONAL BANK OF NEW YORK,

*Plaintiffs-Appellants*,

v.                                                              18-2343

DANIELA SPINOLA GONZALEZ,

*Defendant-Appellee*.

————————————————————————

For Plaintiffs-Appellants:        AARON H. MARKS, P.C. (Alex S. Zuckerman, *on the brief*), Kirkland & Ellis LLP, New York, NY.

For Defendant-Appellee:          ADAM J. WEINSTEIN, Gana Weinstein LLP, New York, NY.

1

Appeal from a July 9, 2018 order of the United States District Court for the Southern District of New York (Stanton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Plaintiffs-Appellants Safra Securities, LLC ("Safra Securities") and Safra National Bank of New York ("Safra Bank") (collectively, the "Safra Parties") sued Defendant-Appellee Daniela Spinola Gonzalez ("Spinola") in the United States District Court for the Southern District of New York. The Safra Parties asked the district court to enjoin a pending arbitration that Spinola had initiated against them before the Financial Industry Regulatory Authority ("FINRA"). The district court (Stanton, *J.*) dismissed the Safra Parties' complaint, and the Safra Parties appealed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## Discussion

This Court reviews *de novo* the grant of a motion to dismiss. *See, e.g.*, *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). We may affirm the judgment of the district court "on any ground appearing in the record, even if the ground is different from the one relied on by the district court." *ACEquip Ltd. v. Am. Eng'g Corp.*, 315 F.3d 151, 155 (2d Cir. 2003).

Whether parties have agreed to arbitrate a matter is fundamentally a question of contractual interpretation. *See, e.g.*, *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001). But "[t]he analysis differs from ordinary contract interpretation in that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 176 (2d Cir. 2003) (quoting *John Hancock*, 254 F.3d at 58). This arbitration-friendly approach effectuates the "federal policy favoring arbitration" found in the Federal

2

Arbitration Act. *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (internal quotation marks omitted). Under these principles, an order to arbitrate "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks omitted).

Here, it cannot "be said with positive assurance" that Safra Securities did not agree to arbitrate Spinola's claims against it. *Id.* Far from it. On March 8, 2018, after initially protesting FINRA's jurisdiction over Spinola's claims, Safra Securities signed a "FINRA ARBITRATION Submission Agreement" that explicitly referenced pending FINRA arbitration number 17-03181 between Safra Securities and Spinola and explicitly agreed to arbitrate those claims. App. 106 (emphasis in original). The Submission Agreement stated, in pertinent part:

> The undersigned parties ("parties") hereby submit the present matter in controversy, as set forth in the attached statement of claim, answers, and all related cross claims, counterclaims and/or third-party claims which may be asserted, to arbitration in accordance with the FINRA By-Laws, Rules, and Code of Arbitration Procedure.

App. 106. The agreement further stated that "[t]he parties agree to abide by and perform any award(s) rendered pursuant to this Submission Agreement" and to "submit to the jurisdiction of any court of competent jurisdiction which may properly enter" a judgment confirming the award. App. 106. That language constitutes a clear and unqualified agreement to arbitrate this case—or, in other words, to "submit" Spinola's claims "to arbitration" before FINRA.[1] App. 106.

---

[1] We acknowledge another potential interpretation of the Submission Agreement: that the Agreement "clearly and unmistakably elects to have the resolution of the arbitrability of the dispute decided by the arbitrator." *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019). For purposes of this summary order, we assume without deciding that the "typical[]" rule applies, and "the question whether the particular dispute is subject to an arbitration agreement [remains] an issue for judicial determination." *Id.* Nevertheless, even if we were to accept the aforementioned alternative interpretation of the Submission Agreement, that would only lead us to the same result we

3

The Safra Parties claimed, in their complaint before the district court, that Safra Securities did not freely assent to the Submission Agreement it signed. Their complaint alleges that the FINRA case administrator "insisted that [Safra Securities] agree to submit the matter to FINRA without reservation," and that Safra Securities filed the agreement "strictly as a result of the threats and blatant coercion of the FINRA case administrator." App. 9. But Safra Securities never explains why it could not have maintained its objections to FINRA's jurisdiction, refused to sign the Submission Agreement, and proceeded to the district court, as it later did. The Safra Parties have thus failed plausibly to plead any indicia of coercion by FINRA that could rise to the level of duress and render the Submission Agreement voidable. In short, the allegations do not undermine our conclusion that Safra Securities agreed to arbitrate Spinola's claims under the legal standards articulated above.

\* \* \*

In light of our conclusion that Safra Securities agreed to arbitrate Spinola's claims, we need not reach the parties' remaining arguments. Accordingly, for the reasons explained above, we **AFFIRM** the order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

reach here: affirming the district court and dismissing the Safra Parties' petition, allowing the FINRA arbitration to proceed.

4