**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1159
_____

JAMIE WILLIAMS, Individually and as Administratrix
ad Prosequendum of Estate of Peter Lee Williams,
deceased; MAUREEN WILLIAMS,
Appellants

v.

GEORGE PONIK; BAYONNE POLICE DEPARTMENT;
CITY OF BAYONNE; JOHYN DOE POLICE OFFICERS 1-10;
JOHN DOE 1-10, individually and/or in their official capacities,
jointly, severally and/or in the alternative
RALPH SCIANNI, Bayonne Police Department
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-15-cv-01050)
District Judge: Hon. John M. Vazquez
_____

Submitted under Third Circuit L.A.R. 34.1(a)
November 21, 2019
_____

Before: CHAGARES, MATEY, and FUENTES, *Circuit Judges*.

(Opinion filed: August 24, 2020)
_____

OPINION[*]
_____

_____
[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

FUENTES, *Circuit Judge*.

Appellants Jamie Williams and Maureen Williams appeal the District Court's grant of summary judgment to Appellees City of Bayonne (the "City"), Bayonne Police Department (the "BPD"), George Ponik ("Officer Ponik"), and Chief of Police Ralph Scianni ("Chief Scianni," and collectively, "Appellees") on their claim for excessive force under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act (the "NJCRA") following the death of Peter Lee Williams ("Peter Williams"). For the reasons that follow, we will affirm in part and reverse in part and remand for further proceedings.

I.

In June 2014, Officer Ponik from the BPD responded to an incident at an apartment building in Bayonne, New Jersey. Upon arrival, he observed an altercation involving 20-30 people, approximately 12 of whom were fighting inside an apartment vestibule, including Peter Williams and his daughter Maureen Williams. Officer Ponik testified that he entered the vestibule and shouted "Stop it. Stop it. Everybody stop."[1] Seconds later, he deployed pepper spray into the air. The altercation stopped, and the individuals exited.

After exiting the vestibule, Peter Williams collapsed. Officer Ponik and other officers attended to him until an ambulance arrived. Sadly, Peter Williams passed away at the hospital. The final autopsy report stated that the manner of death was "natural,"

---

[1] App. 100.

2

and the cause of death was severe coronary disease with contributory causes of cocaine use and mild obesity.[2]

Appellants filed a thirteen-count Complaint in the District Court, alleging that Officer Ponik's actions violated their rights under federal and state law. Appellants later filed an Amended Complaint, substituting Chief Scianni as the correct BPD Chief of Police at the time of the incident and dismissed their third and sixth causes of action.

Following discovery, Appellees filed a motion for summary judgment. The District Court granted the motion and dismissed the Amended Complaint with prejudice, finding, *inter alia*, that (i) no genuine issue of material of fact existed as to the reasonableness of Officer Ponik's use of force; (ii) there was no *Monell*[3] liability as to the City and Chief Scianni for failure to train BPD officers on pepper spray; (iii) Appellants failed to present authority to support their assertion that Officer Ponik falsely imprisoned Peter and Maureen Williams; and (iv) because no constitutional violation occurred, Appellees were shielded from liability for the state law tort claims.[4] This timely appeal followed.

---

[2] App. 278 (capitalization altered).
[3] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).
[4] As part of its ruling, the District Court dismissed with prejudice the § 1983 claims and New Jersey state law claims as to the BPD, finding that it is an administrative arm of the City. App. 11-12; 21; s*ee Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability."). Appellants do not dispute the dismissals as to the BPD.

## II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's decision granting summary judgment is plenary, and we apply the same standard as the District Court.[5] Summary judgment is only appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law.[6] Genuine issues of material fact exist if, when the evidence is viewed in the light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party.[7]

## III.

Appellants raise a number of arguments on appeal, including that (i) Officer Ponik's use of pepper spray was excessive force; (ii) the City is liable under *Monell* for failure to train its officers; (iii) Officer Ponik falsely imprisoned Peter and Maureen Williams; and (iv) Appellees committed various state law torts. Upon its finding that Officer Ponik's use of force was objectively reasonable, the District Court dismissed the remainder of Appellants' claims. We will discuss each issue in turn.

---

[5] *Halsey v. Pfeifer*, 750 F.3d 273, 287 (3d Cir. 2014).
[6] Fed. R. Civ. P. 56(a).
[7] *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

4

A.

Appellants first argue that a reasonable jury could conclude that Officer Ponik's deployment of pepper spray constituted excessive force under federal and state law.[8]  We agree.

To make out a claim for excessive force under the Fourth Amendment, "a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances."[9]  In evaluating an excessive force claim, we must determine the objective reasonableness of the officer's conduct.[10]  The proper calculation of reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[11]  We have held that the issue of reasonableness is ordinarily one for the jury.[12]

---

[8] *See* 42 U.S.C. § 1983 and N.J.S.A. § 10:6-2.  The language of the NJCRA and § 1983 are comparable, and neither party argues that the state analogue requires a different analysis.  *See Perez v. Zagami, LLC*, 94 A.3d 869, 875 (N.J. 2014) (noting that the NJCRA was intended to be analogous to § 1983).

[9] *Lamont v. New Jersey*, 637 F.3d 177, 182-83 (3d Cir. 2011).

[10] *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006).

[11] *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997) (providing additional factors, including "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time").

[12] *See Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004) (citing *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999)).

Construing all facts and inferences for the nonmoving party, a reasonable jury could find that any of the objective reasonableness factors weigh in Appellants' favor. As to the severity of the crime, Officer Ponik observed approximately a dozen people fighting inside the small vestibule of an apartment building. It is undisputed that Maureen Williams was involved in the fight, but Peter Williams was trying to break up the fight and was not acting aggressively. Maureen and Peter Williams were never arrested, and indeed, no other arrests were made. As to the imminent threat factor, while Officer Ponik testified at his deposition that he had a generic, non-specific "fear of my safety and for everybody else," a reasonable jury could still find that he was not in imminent harm.[13] To that end, Officer Ponik testified that he was only "slightly pushed," and that was "just because the crowd was moving."[14] It is undisputed that Peter Williams did not possess a weapon. Indeed, Officer Ponik admitted that he did not see any weapons upon entering the vestibule, and no weapons were ever found. Finally, Officer Ponik admitted that no one was hostile, aggressive or resisting arrest.[15]

In the alternative, Appellees assert that they are entitled to qualified immunity. But a decision on qualified immunity would be premature because "there are unresolved

---

[13] App. 100.

[14] App. 106.

[15] *See Santini v. Fuentes*, 795 F.3d 410, 419-20 (3d Cir. 2015) (vacating summary judgment order even where appellant admitted resisting arrest before being pepper sprayed because the severity of the crime and imminent harm factors weighed in his favor, and his resistance was not violent).

disputes of historical fact relevant to the immunity analysis."[16]  For these reasons,

material factual disputes exist as to whether Officer Ponik used excessive force.  The

existence of those disputes compels us to find that the District Court's grant of summary

judgment was inappropriate, as was the dismissal of Appellants' contingent state law tort

claims.

B.

Appellants next argue that the City and Chief Scianni are liable under *Monell* for (i)

developing and maintaining policies or customs exhibiting deliberate indifference to

constitutional rights, or (ii) failing to train police officers in the use of pepper spray

following citizen complaints.  We disagree.

To find a municipality liable under § 1983, a plaintiff must prove the existence of

a policy or custom that resulted in a constitutional violation.[17]  Liability "must be

founded upon evidence that the government unit itself supported a violation of

constitutional rights."[18]  A plaintiff can show the existence of a policy when a

decisionmaker with final authority "issues an official proclamation, policy, or edict."[19]

Custom may be established by showing that a "course of conduct, although not

specifically endorsed or authorized by law, is so well-settled and permanent as virtually

---

[16] *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) ("[T]he existence of disputed, historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue").

[17] *Monell*, 436 U.S. at 694-95.

[18] *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

[19] *Id.*

to constitute law."[20]  A plaintiff must also "demonstrate that, through its *deliberate*

conduct, the municipality was the 'moving force' behind the injury alleged."[21]

Appellants first contend that the evidence shows a pattern of inappropriate conduct

regarding the use of pepper spray by BPD officers.  Appellants argue that even after

receiving six complaints of improper use of pepper spray, the City made no changes to its

procedures, amounting to deliberate indifference.

Evidence that a municipality "knew about and acquiesced in a custom tolerating

the tacit use of excessive force by its police officers" could be sufficient to preclude

summary judgment on *Monell* liability.[22]  However, Appellants have failed to connect the

past complaints to the present action.[23]  Officer Ponik has no prior complaints of

excessive force against him.  Likewise, the record shows that he has only utilized pepper

spray one other time in his eighteen-year career.  And the prior complaints Appellants

point to involved different circumstances than the one at hand, as some complainants

admitted to resisting arrest and striking officers before pepper spray was deployed.

---

[20] *Id.*

[21] *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original).

[22] *Beck v. City of Pittsburgh*, 89 F.3d 966, 976 (3d Cir. 1996).

[23] *Id.* at 973-76 (concluding that appellant "presented sufficient evidence from which a reasonable jury could have inferred that [the municipality] knew about and acquiesced in a custom tolerating the tacit use of excessive force by its police officers" where appellant demonstrated that the issue was more than "mere isolated events or mere statistics of the number of complaints."  Appellant offered in evidence "a series of actual written civilian complaints of similar nature . . . containing specific information pertaining to the use of excessive force and verbal abuse by [the same officer]."  Appellant also showed that the municipality received an increasing number of excessive force complaints in the years surrounding the incident at issue, ranging from 34-77 complaints per year, and the officer involved in the incident had five complaints against him).

Appellants also contend that even without a pattern of conduct, the need for officer training on pepper spray is so obvious that the failure to train amounts to deliberate indifference. To make out a claim under a failure to train or supervise theory, the plaintiff must show that "the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact."[24]

The record shows that Officer Ponik, and all BPD officers, attended the police academy before becoming officers. There, they were trained on the use of force under the New Jersey Attorney General guidelines. Officer Ponik also testified that he was trained in the use of pepper spray at the academy. Additionally, the BPD conducts mandatory bi-annual training that includes instruction on use of force and pepper spray. The BPD also has an extensive internal procedure on the use of pepper spray, which Officer Ponik testified he was familiar with. Based on the record, we cannot say that the City or Chief Scianni acted with deliberate indifference by failing to further train their officers on the use of pepper spray. Accordingly, we will affirm the grant of summary judgment as to Appellants' *Monell* claims.

## C.

Finally, Appellants assert that a reasonable jury could find that Officer Ponik caused Peter and Maureen Williams to be unlawfully detained. We disagree.

---

[24] *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222-25 (3d Cir. 2014) (explaining that deliberate indifference can be demonstrated by showing a "pattern of violations" which "puts municipal decisionmakers on notice that a new program is necessary," or a single incident where the risk of injury was a "highly predictable consequence" of the failure to train (internal citation omitted)).

Appellants assert claims for "False Arrest/False Imprisonment" under § 1983 and state law.[25] A claim based on false arrest requires an arrest made without probable cause.[26] "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest."[27] While the Supreme Court has suggested that a claim for false imprisonment can be sustained without a false arrest in the event of a prolonged detention, it held that a detention of three days "does not and could not amount to such a deprivation."[28]

Here, the parties rely on video surveillance of the vestibule on the day of the incident, although they present different accounts of what happened on the video. Appellants assert that Officer Ponik blocked the only exit from the vestibule for a few seconds after deploying pepper spray. Appellees respond that Officer Ponik was not blocking the door, and even if he was, no one was trying to escape in the seconds following the pepper spray deployment. We have reviewed the video surveillance and note that it is of poor quality, grainy, and choppy. It is difficult to ascertain with any degree of certainty whether Officer Ponik did in fact block the door after deploying pepper spray, or whether anyone tried to escape during that time.

Nevertheless, it is clear that Appellants were not arrested in connection with this incident. Therefore, Appellants' federal and state law claims for false arrest must fail. As to false imprisonment, even accepting Appellants' version of events, Appellants have

---

[25] App. 55.
[26] *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988).
[27] *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).
[28] *Baker v. McCollan*, 443 U.S. 137, 145 (1979).

presented no authority to support their claim that such a temporary detention amounts to false imprisonment.[29]  Accordingly, Appellants' false imprisonment claims also fail.

## IV.

For the foregoing reasons, as to Appellants' claim of excessive force and related state law and loss of consortium claims, summary judgment will be vacated and the matter will be remanded for further proceedings consistent with this opinion.  We will affirm the District Court's grant of summary judgment as to the *Monell* claim and the false arrest/false imprisonment claims.

---

[29] *See id.*